STATE OF CONNECTICUT *v.* DAVID COPELAND
(8468)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued April 3—decision released June 19, 1990

*Dennis C. La Ganza,* for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Karen Diebolt,* deputy assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant was convicted after a jury trial of first degree robbery in violation of General Statutes § 53a-134a (3). He challenges on appeal the trial court's rulings (1) denying his request for a *Franks*[1] hearing, and (2) permitting an in-court identification by the victim after ruling an out-of-court identification inadmissible.

The following facts are undisputed. On February 27, 1988, John Trentalange was supervising the Michael Lange Music Shop in Waterbury. At approximately 10 a.m., a black male entered the shop and asked Trentalange about guitar lessons. The man was wearing a dark leather or vinyl hat, a black jacket, a yellow shirt and dark bluish pants. Trentalange spoke with this man for approximately ten to fifteen minutes, and then the man left.

Later that day, at about 3:15 p.m., the same man returned to the music shop. He was dressed in the same clothes he had worn in the morning, except that this time he was wearing a red wool ski cap. After the other customers left the store, the man pulled out a knife with a four inch blade and demanded the money in the cash register. He took approximately $250. Trentalange described the perpetrator as a brown-skinned male, about six feet tall and 160 pounds, with decayed and crooked teeth and no facial hair.

On February 29, 1988, the police obtained a warrant authorizing the search of the defendant's room for the clothing that Trentalange had described, the knife and certain items described by the manager of a McDonald's that had been robbed in a similar manner on January 29, 1988. The affidavit in support of the warrant was based on information given by David Waters, who lived in the same apartment building as the defendant.

[1] *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

Waters told police that the defendant had come into his room on February 27, 1988, and informed him that he had robbed the Michael Lange Music Shop and a McDonald's. Waters said the defendant told him that he had robbed the music shop and had to "lay low," that he had pretended to want to buy something, then pulled a knife, threatened the man in the store, and robbed him of $125 to $130. Waters said the defendant then showed him a buck knife with a four inch chipped blade and brown handle. Waters also said that the defendant's teeth were decayed and crooked.

The search of the defendant's room resulted in the seizure of the shirt and jacket described by Trentalange and the knife believed to have been used in the robbery. The items seized were introduced at trial. Also at trial, Trentalange positively identified the defendant as the perpetrator, and, thereafter, the jury returned a verdict of guilty.

I

The defendant first claims that the trial court should have granted his request for a *Franks* hearing. He alleges that the affiants intentionally omitted material information from their affidavit.

In *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the Supreme Court held that a defendant may challenge the veracity of the affiants and obtain an evidentiary hearing on the issue if he can make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit"; id., 155–56; and that "the allegedly false statement is necessary to the finding of probable cause . . . ." Id., 156; see also *State* v. *Bergin*, 214 Conn. 657, 666, 574 A.2d 164 (1990). This rule also applies where the claim is that facts were intentionally or recklessly omitted. *State* v. *Bergin*, supra;

*State* v. *Stepney,* 191 Conn. 233, 238, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 722 (1984).

" '[T]he Fourth Amendment requires that a hearing be held at the defendant's request' "; *State* v. *Ruscoe,* 212 Conn. 223, 232, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); only if the statements that were allegedly intentionally omitted would affect the finding of probable cause.

Specifically, the defendant claims that the affiants failed to include in the affidavit the fact that Waters, the person who supplied them with the tip about the defendant, had originally been a suspect in the case and had a prior felony record.[2] The defendant contends that this information was material to a finding of probable cause because it affected Waters' credibility.

In denying the defendant's request, the trial court held that even if the information had been included in the warrant affidavit, it would not have affected the determination of probable cause, and a hearing was, therefore, unnecessary. We agree.

Under our state constitution, the warrant must pass the *Aguilar-Spinelli*[3] test. *State* v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985). "The *Aguilar-Spinelli* test for reviewing a magistrate's finding of probable cause consists of two prongs: ' " " 'The issuing [judge] must be informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circum-

---

[2] Defense counsel stated at the hearing on the *Franks* motion that Waters had a criminal record and quite possibly a felony record. No evidence was ever produced to support that assertion, which the trial court found to be insufficient to warrant a *Franks* hearing, even if true.

[3] *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

stances from which the affiant concluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable.' " ' *State* v. *Delmonaco,* 194 Conn. 331, 338, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984)." *State* v. *Morrill,* 205 Conn. 560, 566, 534 A.2d 1165 (1987).

There is no question in this case that Waters satisfied the basis of knowledge prong of the *Aguilar-Spinelli* test. The affidavit states that Waters obtained his information about the crime directly from the defendant and that he had seen the knife that the defendant claimed to have used in the robbery. Waters' information was obtained through his direct observation, which is sufficient to satisfy the basis of knowledge requirement. See *State* v. *Daley,* 189 Conn. 717, 720, 458 A.2d 1147 (1983); see also *State* v. *Morrill,* supra; *State* v. *Banta,* 15 Conn. App. 161, 177, 544 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988); cf. *State* v. *Barton,* 22 Conn. App. 62, 576 A.2d 561 (1990).

The defendant argues that if the omitted information, that is, that Waters had a criminal felony record and was originally a suspect, had been included in this affidavit, the affidavit could not have satisfied the second prong of *Aguilar-Spinelli.* He argues that with this additional information, a magistrate could not have found the informant to be credible or his information reliable. We find this argument to be unpersuasive.

"[A]n affiant may omit facts that he believes to be either immaterial or unsubstantiated." *State* v. *Bergin,* supra; see also *People* v. *Stewart,* 105 Ill. 2d 22, 43, 473 N.E.2d 840 (1984), cert. denied, 471 U.S. 1131, 105 S. Ct. 2666, 86 L. Ed. 2d 283 (1985). Even if he had read these additional facts, the magistrate in this case could have determined that the information was reliable. The

first fact that verifies the reliability of the information is that the affiant here provided the name of the informant rather than employing "the common practice of referring to an anonymous informant, thereby exposing him to public view . . . and to possible criminal and civil liability should his allegations prove false." *State* v. *Daley,* supra, 725. In this light, Waters could be viewed as a citizen informer; see id., 724; and " '[i]t is generally agreed . . . that a comparable showing is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or a witness.' 1 W. LaFave, Search and Seizure § 3.4, p. 587." Id.; *State* v. *Banta,* supra, 177–78.

Further, even if we were to accept the defendant's argument that Waters could not be viewed as a citizen informer, the affidavit still verifies the reliability of his information. Waters' voluntary account of the crime comports completely with the victim's own account. While it is possible, as the defendant claims, that Waters knew the details of the robbery because he had committed the crime himself, we cannot ignore the additional facts involved here. Waters also described the defendant as having crooked and decayed teeth, the same distinct characteristic that the victim had described. The fact that the police corroborated this significant piece of information with the statement taken from the victim is enough to establish reliability. "If the police have evidence (such as from prior independent police work) which corroborates some of the details included in the affidavit, then an inference of reliability will arise. . . . In fact, if there has been sufficient corroboration, a statement may support a warrant *regardless of its source.*" (Citations omitted; emphasis added.) *State* v. *Ferguson,* 185 Conn. 104, 113, 440 A.2d 841 (1981). Even if there were initially a sug-

gestion that Waters fabricated his information, the suggestion was repudiated by the police investigation confirming its accuracy. See *State* v. *Ruscoe,* supra, 233. "Where many significant portions of a statement of an informant have been verified from independent reliable sources, it may be reasonable to infer the accuracy of the remainder." *State* v. *Daley,* supra, 721; see also *State* v. *Weinberg,* 215 Conn. 231, 239–40, 575 A.2d 1003 (1990).

In reviewing the warrant affidavit, we must read the warrant in a common sense and realistic manner; *State* v. *Banta,* supra, 177; and determine whether the facts in the affidavit are sufficient to " 'justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for the issuance of the warrant.' " *State* v. *Delmonaco,* supra, 337. Because the inclusion of the information that was allegedly intentionally or recklessly omitted would not affect the determination of probable cause, the trial court did not err in denying the defendant's request for a *Franks'* hearing. See *State* v. *Bergin,* supra, 66–67.

## II

The defendant next claims that the trial court erred in allowing the victim to make an in-court identification of the defendant after excluding an out-of-court identification. We disagree.

At the suppression hearing, the following facts were established. In June, 1988, Trentalange was subpoenaed to the Waterbury courthouse to talk to the state's attorney. He was told that there was a potential problem with the case because he was unable to make an identification. Anthony Solmita, an investigator, led Trentalange through a corridor in the courthouse where the defendant was standing. There were approximately eight other people in the hallway, at

least four of whom were white, and most of whom were standing to the right of the defendant. As they entered the hallway, Solmita asked Trentalange, "Do you see him around here?" Solmita knew that the defendant was represented by counsel and that Trentalange previously had been unable to make a positive identification from photographic arrays on two separate occasions. The defendant was the only one present whose photograph Trentalange had seen before, during photographic arrays viewed in the previous March and May. Trentalange identified the defendant during this encounter.

At this hearing, Trentalange testified that he believed he would have an independent recollection of the robber regardless of this courthouse confrontation. The defendant was not in the courtroom during this hearing.

The trial court excluded the out-of-court identification without articulation, but found that Trentalange had a sufficient independent basis to make an in-court identification. The defendant claims error in the portion of the trial court order allowing the in-court identification. The defendant does not claim that the in-court identification was unnecessarily suggestive, but rather he claims that it was fatally tainted by the previous out-of-court identification. He argues that Trentalange could not have an independent, untainted basis on which to make the identification.

We must first determine "whether the state met its burden of establishing by clear and convincing evidence . . . that the victim based [his] in-court identification 'upon disassociated observation independent of the defective pretrial procedure.' " (Citations omitted.) *State* v. *Gordon,* 185 Conn. 402, 418, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); see also *State* v. *Mitchell,* 204

Conn. 187, 204, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987); *State* v. *Guertin,* 190 Conn. 440, 458–59, 461 A.2d 963 (1983); *State* v. *Liptak,* 21 Conn. App. 248, 251–52, 573 A.2d 323, cert. denied, 215 Conn. 809, 576 A.2d 540 (1990). The factors that we must consider in making this reliability determination are: the opportunity that the witness had to view the suspect, the degree of attention, the accuracy of description, the witness' level of certainty, and the time between the crime and the confrontation. *State* v. *Gordon,* supra, 416–18; see also *State* v. *Mitchell,* supra, 202. "The reliability inquiry delineated in *Manson* [v. *Brathwaite,* 432 U.S, 98, 116, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)] is fact-bound and made on an ad-hoc basis. Generally, where the admissibility of evidence depends upon a preliminary question of fact to be determined by the court, 'its decision is not to be reversed unless there is clear and manifest error.' " *State* v. *Mitchell,* supra, 203.

The defendant suggests that Trentalange's in-court identification was fatally tainted by the inclusion of the defendant's photograph in both photographic arrays viewed by Trentalange and by the suggestive out-of-court identification. He argues that Trentalange's inability to make a positive identification of the defendant from those photographic arrays, the viewing of the defendant's photograph in both arrays, plus the courthouse identification, would have a subliminal effect on Trentalange, necessarily affecting a subsequent in-court identification. We do not agree.

In this case, the evidence supports the trial court's conclusion that Trentalange had an independent basis upon which to make an in-court identification. Trentalange had a lengthy opportunity to view the defendant. He saw the defendant in the morning on the day of the crime and spoke with him for approximately ten to fifteen minutes. The defendant later returned, and

Trentalange again had an opportunity to view him. The defendant waited in the store until the other customers had left, and he then approached Trentalange with a knife, demanding money. At no time was his face covered. Compare *State* v. *Perez,* 198 Conn. 68, 502 A.2d 368 (1985).

Trentalange also had a high degree of attention because he was speaking to the defendant one-on-one for approximately fifteen minutes as they engaged in a discussion about guitar lessons. Cf. *State* v. *Liptak,* supra, 253. Also supportive of a conclusion as to the victim's high degree of attention are the facts contained in his description of the defendant. He described the defendant's clothing in detail, stated that the defendant was wearing a different hat the second time he entered the shop and that the defendant had grown facial hair since the incident, and, most important, said that the defendant had the distinctive feature of crooked and decayed teeth. The victim indicated that he could make an identification with 100 percent certainty.

The prior uncertainty expressed by Trentalange in his attempt to make an identification of the defendant does not render the in-court identification unreliable. "[S]uch prior uncertainty goes only to the weight to be given to the proffered in-court identification, and not to its admissiblity." *State* v. *Perez,* supra, 76. Further, the defendant's claim that the fifteen month time period between the incident and the identification affected the reliability of the identification is unpersuasive. While fifteen months may, indeed, be excessive in certain cases; see *State* v. *Gordon,* supra, 418; when taken with the totality of the circumstances in this case, it is not enough to render the identification unreliable.

We conclude that, under the totality of the circumstances, the trial court was correct in concluding that the victim's in-court identification of the defendant was

made on an independent basis and was, therefore, reliable. It was for the jury to weigh the prior uncertainty and determine what weight should be afforded to the in-court identification.

The judgment is affirmed.

In this opinion the other judges concurred.