STATE OF CONNECTICUT *v.* DONALD DANIELS
(SC 15992)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued November 3, 1998—officially released March 16, 1999

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Robin Cutuli* and *David Zagaja*, assistant state's attorneys, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Donald Daniels, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32.[1] On appeal,

---

[1] General Statutes § 53a-32 provides: "Violation of probation or conditional discharge. Arrest. Hearing. Disposition. (a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Whenever a sexual offender, as defined in section 54-260, has violated the conditions of his

we must resolve two issues. Initially, we must determine whether the defendant's *Alford* plea,[2] entered subsequent to the revocation of his probation, renders this

probation by failing to notify his probation officer of any change of his residence address, as required by said section, such probation officer may notify any police officer that such person has, in his judgment, violated the conditions of his probation and such notice shall be sufficient warrant for the police officer to arrest such person and return him to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but

appeal moot. We conclude that it does not. Additionally, we must determine whether the state, at the probation revocation hearing, had presented sufficient evidence to prove, by a preponderance of the evidence, that the defendant had violated the conditions of his probation. We conclude that the state satisfied its burden of proof and, therefore, we affirm the judgment of the trial court revoking the defendant's probation.

The following facts and procedural history are pertinent to this appeal. On September 29, 1995, following his conviction for possession of narcotics in violation of General Statutes § 21a-279 (a),[3] the defendant was sentenced to three years of incarceration, execution suspended, and placed on probation for three years. One of the conditions of probation required the defendant to obey all "criminal law[s] of the United States, this state, or any other state or territory."[4]

On July 15, 1996, the defendant was arrested for allegedly breaking into an automobile in a parking lot in downtown Hartford. As a result, he was charged with criminal mischief in the third degree in violation of

consents to being punished as if he were guilty to avoid the risk of proceeding to trial." *Commissioner of Correction* v. *Gordon*, 228 Conn. 384, 385 n.1, 636 A.2d 799 (1994). "A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985).

[3] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[4] Additionally, the conditions state: "Drug Counsel[ing]" and "Stay away from 710-714 Vine Street."

General Statutes § 53a-117,[5] burglary in the third degree in violation of General Statutes § 53a-103,[6] larceny in the sixth degree in violation of General Statutes § 53a-125b[7] and tampering with a motor vehicle in violation of General Statutes § 53a-119b (c).[8]

On the basis of this alleged criminal conduct, the state charged the defendant with violation of his probation, under § 53a-32; see footnote 1 of this opinion; and a probation revocation hearing commenced on June 24, 1997. Testifying at the hearing, Jesus Martinez, the owner of the vehicle, stated that after he and a friend, Denise Ayala, had left a Hartford club, they observed a person inside Martinez' vehicle as they approached it. Martinez left the scene to summon the police and,

---

[5] General Statutes § 53a-117 provides in relevant part: "Criminal mischief in the third degree: Class B misdemeanor. (a) A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage; or (2) damages tangible property of another by negligence involving the use of any potentially harmful or destructive force or substance, such as, but not limited to, fire, explosives, flood, avalanche, collapse of building, poison gas or radioactive material. . . ."

[6] General Statutes § 53a-103 provides in relevant part: "Burglary in the third degree: Class D felony. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein. . . ."

[7] General Statutes § 53a-125b provides in relevant part: "Larceny in the sixth degree: Class C misdemeanor. (a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less. . . ."

[8] General Statutes § 53a-119b provides in relevant part: "Using motor vehicle or vessel without owner's permission. Interfering or tampering with a motor vehicle. First offense: Class A misdemeanor. Subsequent offense: Class D felony. . . . (c) A person is guilty of interfering or tampering with a motor vehicle when: (1) He puts into motion the engine of any motor vehicle while it is standing without the permission of the owner except that a property owner or his agent may remove any motor vehicle left without authorization on such owner's property in accordance with section 14-145; or (2) with intent and without right to do so, he damages any motor vehicle or damages or removes any of its parts or components. . . ."

upon his return, found that the defendant had exited his vehicle and was in the middle of the parking lot. After the defendant had fled the scene, Martinez discovered that one of the windows of his vehicle was broken, and a compact disc player and some tapes were missing from the automobile. Shortly thereafter, while riding in a police patrol car, Martinez saw the defendant on the street and identified him as the perpetrator.

On July 9, 1997, the trial court found that the defendant had violated the conditions of his probation and sentenced him to serve thirty-three months of the three year period of incarceration that previously had been imposed and suspended. The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). During the pendency of this appeal, the defendant pleaded guilty to burglary in the third degree under the *Alford* doctrine in connection with the incident regarding Martinez' vehicle. See footnote 2 of this opinion. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the trial court: (1) improperly found that the state had proved, by a preponderance of the evidence, that the defendant had violated the conditions of his probation; and (2) violated the defendant's due process rights by admitting into evidence Martinez' out-of-court identification of the defendant. The state, however, asserts that the defendant's *Alford* plea renders the appeal moot. Alternatively, the state disputes the defendant's claims, arguing that: (1) the state presented sufficient evidence of the defendant's probation violation; and (2) the court should not reach the defendant's unpreserved due process claim.

We conclude that this appeal is not moot. As to the defendant's first claim, we conclude that the trial court

properly found that the state had satisfied its burden of proof. We decline to review the defendant's due process claim, however, because it fails to satisfy the reviewability portion of the four part test for unpreserved claims that we enunciated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

I

Before addressing the defendant's claims on the merits, we must first determine whether the defendant's *Alford* plea, entered subsequent to the probation revocation hearing that underlies this appeal, renders this appeal moot. "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) *Ayala* v. *Smith*, 236 Conn. 89, 93–94, 671 A.2d 345 (1996).

The state contends that the present appeal is moot because the trial court can grant the defendant no practical relief. According to the state, if the court were to agree with the defendant's claims on appeal, the defendant could be granted a new probation revocation hearing. The state asserts, however, that the defendant's plea of guilty under the *Alford* doctrine would estop him from asserting his innocence at the new hearing.

Essentially, the state argues that we can provide no practical relief to the defendant because a reversal of the trial court's finding that the defendant had violated his probation would not improve the defendant's prospects. Therefore, according to the state, the defendant's "conviction controls the outcome of any second probation revocation hearing [and, therefore], the defendant's appeal is moot."

The defendant argues that the appeal is not moot because a finding that the evidence was insufficient to establish a violation of probation would entitle him to a judgment of acquittal for the violation of probation charge as well as the underlying offenses. Specifically, the defendant argues that if the court were to conclude that "proof of evidence of felonious conduct [was] not sufficient to establish a violation of probation, proof of such evidence [would] certainly not [be] sufficient to sustain a criminal conviction for such felonious conduct," because the burden of proof in a criminal prosecution presents the state with a significantly higher threshold to meet than does the burden in a violation of probation proceeding.[9] The defendant asserts, therefore, that because an acquittal on all charges would clearly afford the defendant practical relief, this appeal is not moot.

---

[9] The defendant explicitly states that he "does not rely on double jeopardy; instead, he relies on logic." Double jeopardy principles are implicit, however, in his assertion that he is entitled to a judgment of acquittal rather than be subject to a new probation revocation hearing.

Because we conclude that this appeal is not moot; see part I of this opinion; and that the evidence adduced at the probation revocation hearing was sufficient to establish a probation violation; see part II of this opinion; we need not consider the appropriate relief to be afforded a defendant in a case in which the evidence was insufficient to establish a violation. Specifically, we do not resolve the issue of whether, based upon the reasoning of *State* v. *McDowell*, 242 Conn. 648, 654, 699 A.2d 987 (1997) (principles of double jeopardy do not bar criminal trial on underlying charges after defendant found in violation of probation), the state may bring a second probation revocation hearing on the same facts, when, at the conclusion of

We agree with the defendant that his appeal is not moot, although we do so for a different reason. Even if we were to agree with the state's contention that the defendant would be entitled only to a new hearing at which the violation of probation would be predetermined by his conviction pursuant to his *Alford* plea, we do not agree that holding such a hearing would be a pointless endeavor, because the trial court would have the discretion to impose a different disposition. Therefore, practical relief could await the defendant following a determination that he had violated a condition of his probation.

We have stated: "[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . General Statutes § 53a-32 (a). If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation or conditional discharge or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. General Statutes § 53a-32 (b).[10] In making this second determination, the trial court is vested with broad discretion. *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 289–90, 641 A.2d 370 (1994).

an initial hearing, a court concludes that insufficient evidence was presented to support revocation.

[10] See footnote 1 of this opinion.

We recognize that the defendant's conviction based on his *Alford* plea would establish a violation of the conditions of the defendant's probation, thereby significantly lightening the state's burden under the first component, the evidentiary phase, of a new probation revocation hearing.[11] It is the second component, the sentencing phase, however, under which the defendant plausibly may find practical relief. Although a criminal conviction " 'affords a more than sufficient basis for revocation of probation' "; *State* v. *Pecoraro*, 196 Conn. 305, 307, 493 A.2d 180 (1985); because "the trial judge has 'an exceptional degree of flexibility' in determining whether to grant or revoke probation and on what terms"; *State* v. *Smith*, supra, 207 Conn. 164, quoting *Burns* v. *United States*, 287 U.S. 216, 220, 53 S. Ct. 154, 77 L. Ed. 266 (1932); it is by no means a foregone conclusion that, at a new hearing, the defendant will receive the same sentence as that imposed upon him at the first hearing, namely, the revocation of his probation and the imposition of thirty-three months of his three year suspended sentence. The trial court, in its broad discretion, would be free to choose from among a number of statutorily enumerated dispositions, among which revocation and imposition of a portion of the defendant's suspended sentence is merely one option. Therefore, we conclude that because this court could grant practical relief to the defendant, the defendant's appeal is not moot.

## II

Having concluded that this appeal is not moot, we next consider the defendant's claim that the trial court improperly found that the state had presented sufficient evidence to prove, by a preponderance of the evidence,

---

[11] In light of our conclusions on the mootness and sufficiency issues; see footnote 9 of this opinion; we need not decide today whether, in light of his guilty plea under *Alford*, the doctrine of collateral estoppel would bar the defendant from asserting his innocence in a subsequent hearing.

that he had violated the conditions of his probation. We conclude that the trial court's finding was proper.

Before turning to the merits of the defendant's claim, it is useful to note that the burden of proof in a probation revocation hearing is not proof beyond a reasonable doubt, as in the case of a criminal prosecution. Rather, according to § 53a-32 (b), "revocation shall [not] be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and *by a preponderance of the evidence.*" (Emphasis added.) See also *State* v. *Davis*, supra, 229 Conn. 295 (burden of establishing probation violation is preponderance of evidence standard).

At the defendant's probation revocation hearing, the state presented two witnesses: probation officer Lawrence Reynolds and Martinez. Reynolds' testimony may be summarized as follows. In October, 1995, Reynolds met with the defendant, read to him the conditions of his probation, and asked if he fully understood them. The defendant answered in the affirmative and signed the conditions in Reynolds' presence. On the witness stand, Reynolds read the first condition of probation, which prohibited the defendant from violating any law of the United States, this state, or any other state or territory. Reynolds stated that, in addition to the criminal charges pending against the defendant, the defendant "was not in good standing at the time of the incident offense" because he had missed about six months of probation reporting, "had used drugs and had been dismissed dissatisfactory from drug treatment," all of which were violations of the conditions of his probation.

Martinez' testimony may be summarized as follows. Martinez and Ayala had left a Hartford club around 1 a.m. and were walking toward his vehicle when Ayala

saw someone inside it. The perpetrator "was half inside of the trunk area of [his] vehicle and backseat . . . ." The car door was open and the interior light was on. The parking lot itself was also well lit. When he saw the person in his car, Martinez yelled at him, which caused the perpetrator to lift his head and look straight at Martinez for about thirty seconds. The perpetrator then leaned back inside the trunk. Martinez ran to summon the police. When he returned, Martinez found the perpetrator outside the vehicle, in the middle of the parking lot. The perpetrator then fled the scene. Martinez found that a small window of his vehicle was broken, there was damage to the dashboard, and a compact disc player and some tapes were missing from the vehicle. The police drove Martinez and Ayala around the area in a patrol car and, two to three minutes later, they came upon the defendant. Martinez stated that he "pointed out to the policeman that he looks just exactly like the person that was inside my vehicle. We got close to him, and '[t]hat's the guy,' I said to the policeman." When asked if the person he saw in his car was present in the courtroom, Martinez pointed to the defendant.

On cross-examination, the defendant identified minor discrepancies in Martinez' testimony.[12] The defendant emphasized an alleged inconsistency regarding the perpetrator's appearance. The defendant noted that

[12] First, the defendant noted a discrepancy between Martinez' testimony and the statement he had given to the police. Specifically, the defendant noted that Martinez testified that when he had yelled at the defendant, the defendant had looked at him and Ayala and then returned to what he had been doing inside the vehicle. The statement Martinez had given to the police, however, indicated that when Martinez yelled at the defendant, the defendant exited the vehicle and ran. Martinez made no mention of the defendant returning to what he had been doing prior to Martinez' arrival.

The defendant also asked Martinez about his statement that, while riding around Hartford in the police patrol car, he had seen the defendant on Chapel Street. The defendant noted that this testimony conflicted with the police report, which indicated that the defendant had been apprehended at the intersection of Walnut and Chestnut Streets. Martinez responded that he did not live in the area.

although the police report indicated that Martinez had described the perpetrator as "balding," Martinez testified that the perpetrator had "[r]eally short hair," and was "[k]ind of bald but with hair."

The defendant argued that Martinez' identification was not a sufficient basis upon which to find, by a preponderance of the evidence, that the defendant had violated the conditions of his probation.[13] After viewing a mug shot of the defendant that had been admitted into evidence at the court's request, the court stated that "it's a very close haircut. And I could see there where that could be interpreted as balding . . . ." The court then found the defendant in violation of the conditions of his probation.

On appeal, the defendant again argues that the evidence presented at the hearing, which consisted primarily of Martinez' testimony, was insufficient for the trial court to find that the defendant had violated his probation. Specifically, the defendant argues that Martinez glimpsed the defendant only briefly in a parking lot at night, and that he showed confusion about the defendant's appearance while testifying at the revocation hearing. The defendant claims that the reliability of the identification is further undermined by the fact that the police did not apprehend the defendant at the scene of the crime but, rather, arrested him "in another area of the city at a later time." These arguments essentially mirror those made to the trial court.

On the evidence presented and the testimony elicited at the hearing, we cannot say that the trial court's conclusion that the defendant violated his probation,

---

[13] Defense counsel stated: "I don't think this identification is enough, Your Honor. And I think based on the fact that my client was found so far away from where [the incident] actually happened, Your Honor, I don't think it is enough to pinpoint my client. My client was not caught in the act, Your Honor. They grabbed him many blocks away after a shaky identification from someone who was in clubs all night, Your Honor."

reached after careful consideration of the evidence, was clearly erroneous. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997) (appellate court's review of trial court's findings of fact "is limited to deciding whether such findings were clearly erroneous" [internal quotation marks omitted]); see also *State* v. *Welch*, 40 Conn. App. 395, 401, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996) (appellate court "may reverse the trial court's initial factual determination that a condition of probation has been violated only if [it] determine[s] that such a finding was clearly erroneous" [internal quotation marks omitted]). "The determination of a witness' credibility is the special function of the trial court." (Internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996). The trial court in the present case noted that "[t]he whole case here is the credibility of [Martinez] . . . ." After seeing a photograph of the defendant with very short hair, the trial court concluded that Martinez' description of the defendant as "bald but with hair" was not inconsistent. We presume that the trial court considered the other alleged discrepancies in Martinez' testimony—such as his mistake as to the location of the arrest, and whether the defendant had looked at Martinez and Ayala before returning to what he was doing—and properly performed its role as fact finder in assessing the credibility of the witness testifying before it. Although it made no such express findings, the trial court reasonably could have believed that: the parking lot lights and the dome light inside Martinez' car provided sufficient illumination for Martinez to see the perpetrator clearly enough to make an accurate identification; a thirty second viewing of the perpetrator was sufficient to make the identification a reliable one; and two or three minutes was not too long a period of time to elapse

between the perpetrator's flight from the crime scene and the defendant's arrest so as to undermine the reliability of the identification. In sum, the trial court was free to consider the facts and Martinez' credibility, and to attach to them whatever weight the court reasonably deemed appropriate. We conclude, therefore, in light of all the evidence adduced at the hearing, that the trial court's determination that the defendant had violated the conditions of his probation was not clearly erroneous.[14]

### III

The defendant's second and final claim is that Martinez' out-of-court identification of him violated his due process rights. Specifically, the defendant argues that the identification was "too suggestive and too unreliable and thus violated the defendant's due process rights under Connecticut case law." Citing *State* v. *Myers*, 193 Conn. 457, 464, 479 A.2d 199 (1984), the defendant notes that the determination of whether a pretrial identification procedure is violative of a defendant's due process rights requires a two-pronged test. The first prong is whether the identification procedure was unnecessarily suggestive; the second is whether the resulting identification was not reliable in the totality of the circumstances. Id. The defendant claims that the procedure

---

[14] We had ordered the parties to file supplemental briefs limited to the following question: "In the event the court should conclude that the evidence was insufficient to support the probation revocation order, would the defendant be entitled to relief in the form of a judgment of acquittal? See *State* v. *Carey*, 30 Conn. App. 346, 355 [620 A.2d 201] (1993) ('[w]hen the evidence adduced at a probation revocation hearing is insufficient, the defendant is entitled to a judgment of acquittal'), rev'd on other grounds, 228 Conn. 487 [636 A.2d 840] (1994); but see *State* v. *McDowell*, 242 Conn. 648, 653 [699 A.2d 987] (1997) (bar of double jeopardy attaches only to proceedings that are essentially criminal, and probation revocation hearings are not considered criminal proceedings)." Because we conclude, however, that the evidence was sufficient to support the revocation of the defendant's probation, we need not address this issue.

employed in this case was both unnecessarily sugges-
tive and unreliable.[15]

Because the defendant did not raise this claim before
the trial court, we must determine whether the defen-
dant can prevail under the four-prong test articulated
in *State* v. *Golding*, supra, 213 Conn. 239–40. In *Golding*,
we held "that a defendant can prevail on a claim of
constitutional error not preserved at trial only if *all*
of the following conditions are met: (1) the record is
adequate to review the alleged claim of error; (2) the
claim is of constitutional magnitude alleging the viola-
tion of a fundamental right; (3) the alleged constitu-
tional violation clearly exists and clearly deprived the
defendant of a fair trial; and (4) if subject to harmless
error analysis, the state has failed to demonstrate harm-
lessness of the alleged constitutional violation beyond
a reasonable doubt." (Emphasis in original.) Id. "The
first two steps in the *Golding* analysis address the
reviewability of the claim, while the last two steps
involve the merits of the claim." *State* v. *Beltran*, 246
Conn. 268, 275, 717 A.2d 168 (1998). We conclude that

---

[15] To support his claim that the identification was unnecessarily suggestive,
the defendant relies essentially on the fact that the police did not use a
lineup or photographic array but, rather, "drove [Martinez] around the city
of Hartford, spotted a black male that resembled the perpetrator's descrip-
tion and said to [Martinez], 'Is that him?' " Martinez' testimony differs, how-
ever, from the defendant's version of the identification procedure. According
to Martinez, as the police drove him and Ayala around the city, Martinez
himself saw the defendant and identified him to the police as someone that
"looks just exactly like the person that was inside my vehicle."

To demonstrate the unreliability of the identification, the defendant cites
as support two cases, *State* v. *Figueroa*, 235 Conn. 145, 150–60, 665 A.2d
63 (1995) (victim's identification reliable after photographic array and after
victim had viewed her assailant during twenty to thirty minute assault and
during subsequent car ride), and *State* v. *Copeland*, 22 Conn. App. 98, 104–
108, 576 A.2d 567 (1990) (identification reliable because victim had viewed
defendant for ten to fifteen minutes on morning of crime). The defendant
argues that, because Martinez' thirty second opportunity to see the person
in his car was significantly shorter than the victims' similar opportunities
in those cases, the identification in this case is unreliable.

the defendant's claim fails under the first prong of the *Golding* test.[16]

In *Golding*, we stated that "[t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." *State* v. *Golding*, supra, 213 Conn. 240.

We conclude that the record in this case is inadequate for review. We have stated that "[a] record is not inadequate for *Golding* purposes because the trial court has not reached a conclusion of law if the record contains the factual predicates for making such a determination." *State* v. *Torres*, 230 Conn. 372, 378–79, 645 A.2d 529 (1994). In other words, in the present case, if all the facts surrounding the identification procedure were brought to light during the hearing, we could conceivably consider the claim even if the trial court had not done so. The factual background necessary for disposition of this claim, however, is deficient. Neither party questioned Martinez specifically regarding the identification procedure employed. Moreover, none of the police officers who conducted the procedure was called to testify. Finally, the trial court did not make any explicit findings as to the suggestiveness of the procedure. The only description of the procedure contained in the record is that of Martinez, in which he states that

---

[16] In this connection, we assume, without deciding, that a claim of unduly suggestive identification under the due process clause applies to a revocation of probation proceeding. Cf., e.g., *State* v. *Jacobs*, 229 Conn. 385, 391–92, 641 A.2d 1351 (1994) (exclusionary rule does not generally apply to probation revocation proceedings); *Payne* v. *Robinson*, 207 Conn. 565, 571–72, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988) (same).

he was driven around the streets of Hartford until he saw someone that looked like the perpetrator. Moreover, we do not know whether Martinez was ever face-to-face with the defendant during the identification;[17] how many other people were nearby on the street; how many other people they had passed, as they drove through the streets, that Martinez had *not* identified as the perpetrator; or what, if anything, the police officers said to him during the ride. In light of the foregoing, we conclude that this claim was not developed sufficiently in the trial court for this court to review the identification procedure for constitutional infirmity. Cf. id., 380 (record adequate for review of claim that canine sniff constituted impermissible search, where state trooper's uncontested testimony resulted in "undisputed facts sufficient to determine that a canine sniff had occurred and the circumstances under which it had occurred"). Consequently, the defendant's claim fails to satisfy the first prong of the *Golding* analysis, and we therefore decline to review it.

### IV

In summary, we conclude that this appeal was not rendered moot by the defendant's *Alford* plea. We further conclude that the trial court properly found that the state had presented sufficient evidence to prove, by a preponderance of the evidence, that the defendant had violated the conditions of his probation.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN, NORCOTT and PALMER, Js., concurred.

BERDON, J., concurring in the result. It is no secret that many criminal defendants perceive that the system is stacked against them. It is for this reason that so

---

[17] Martinez did state, however, that the defendant was not placed in the same car with him after he was apprehended.

many defendants are willing to cut their losses by entering *Alford*[1] pleas. In the present appeal, the defendant elected to accept a consecutive sentence of fifteen months in order to avoid the threat of greater punishment. In other words, the defendant conducted a cost/benefit analysis and determined that he preferred the certainty of "only" fifteen months to the possibility of a substantially longer sentence. At no time, however, did he ever admit that he committed the crime.[2] I agree with Justice McDonald that it would be unjust to regard the defendant's plea as conclusive and irrebuttable evidence of his guilt.

The majority leaves this issue for another day. I share Justice McDonald's view that we have an obligation to inform criminal defendants and their attorneys of the consequences that flow from *Alford* pleas, which occupy a central role in our system of criminal justice. Accordingly, I do not join footnote 11 of the majority opinion.

MCDONALD, J., concurring. The majority today declines to decide whether an *Alford*[1] plea would bar the defendant from asserting his innocence in any subsequent proceeding. See footnote 11 of the majority opinion. In fairness to criminal defendants who, everyday, and in very large numbers, enter *Alford* pleas to accept plea bargains while not admitting guilt, and for the sake of the criminal justice system, we should address this issue and not leave it in doubt. In this era

---

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] If the defendant is in fact innocent, one may readily understand his reluctance to make such an admission.

[1] In *North Carolina* v. *Alford*, 400 U.S. 25, 37–38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), the United States Supreme Court upheld the defendant's guilty plea even though he continued to proclaim his innocence. The court analogized this guilty plea to a plea of nolo contendere, defined as "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." Id., 35.

of too much violent crime and the allocation of too few judicial resources to the criminal justice system, *Alford* pleas are essential.

The state contends that the defendant's appeal is moot because the court cannot grant him any practical relief. Essentially, the state argues that the defendant's *Alford* plea would estop him from establishing his innocence at a new hearing. According to the state, therefore, this court can provide no relief to the defendant because a reversal of the trial court's finding of a violation of probation ultimately could not change the defendant's status as a probation violator.

Although a conviction is a "more than sufficient basis for revocation of probation"; *State* v. *Pecoraro*, 196 Conn. 305, 307, 493 A.2d 180 (1985); I believe that the defendant's *Alford* plea does not estop him from protesting his innocence at a subsequent hearing and thus his appeal is not moot.

In *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985), this court observed that a guilty plea under *Alford* is a "judicial oxymoron" because a guilty plea is a confession of guilt. We stated that with "a guilty plea under the *Alford* doctrine . . . the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." Id. We also observed in *Palmer* that, "[i]n *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), the United States Supreme Court treated [an *Alford* plea] as the functional equivalent of a plea of nolo contendere." *State* v. *Palmer*, supra, 169 n.3.

In *Alford*, the United States Supreme Court observed that a guilty plea under which the defendant maintains his innocence is the practical equivalent of a plea of nolo contendere: "The fact that his plea was denominated a

plea of guilty rather than a plea of nolo contendere is of no constitutional significance with respect to the issue now before us . . . . Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act [i.e., a nolo contendere plea] and a plea containing a protestation of innocence [i.e., an *Alford* plea] . . . ." *North Carolina* v. *Alford,* supra, 400 U.S. 37; see also *State* v. *Martin,* 197 Conn. 17, 20 n.7, 495 A.2d 1028 (1985).

It is well established that a plea of nolo contendere does not establish conclusively a defendant's guilt in subsequent civil or criminal proceedings. See, e.g., annot., 89 A.L.R.2d 540, 600 (1963) ("[t]he fundamental rule, as unanimously accepted by all the courts as a rule expressing the effect of the plea in the case, is that while the plea of nolo contendere may be followed by a sentence, it does not establish the fact of guilt for any other purpose than that of the case to which it applies").

The United States Circuit Courts of Appeals have held that pleas of nolo contendere may not be used to establish guilt conclusively in subsequent civil and criminal proceedings. See, e.g., *Doherty* v. *American Motors Corp.,* 728 F.2d 334, 337 (6th Cir. 1984) ("a plea of nolo contendere is a confession only for the purpose of the criminal prosecution and does not bind the defendant in a civil action for the same wrong"); *Lipsky* v. *Commonwealth United Corp.,* 551 F.2d 887, 893–94 (2d Cir. 1976) (consent decrees, like nolo contendere pleas, may not be used in subsequent proceeding for collateral estoppel purposes, since issues sought to be precluded were not actually litigated). The majority of state courts also have so held. See, e.g., *State* v. *Ruby,* 650 P.2d 412, 414 (Alaska App. 1982) ("[A] conviction, even though based upon a plea of nolo contendere, is admissible in a subsequent probation revocation proceeding to prove a violation of law. . . . Consistent with general law governing pleas of nolo contendere, such evidence is,

however, not conclusive against [the defendant]. It does not collaterally estop him from protesting his innocence and, consequently, he should be given an opportunity, if he requests it, to put on evidence which would support his contention that he is not guilty . . . ."); *Maselli* v. *State*, 446 So. 2d 1079, 1080–81 (Fla. 1984) (at probation revocation proceeding, "[t]he judge may rely on [a] conviction even if it was imposed pursuant to a plea of nolo contendere," but "the probationer must be provided an opportunity to be heard on . . . whether he is guilty of the charge to which he pleaded no contest"). Connecticut decisions are in accord with this majority view. *State* v. *Bridgett*, 3 Conn. Cir. Ct. 206, 208–209, 210 A.2d 182 (1965) ("[t]he defendant is not estopped from denying the facts to which he pleaded nolo contendere in a subsequent judicial civil proceeding"). With respect to an *Alford* plea, the Appellate Court stated in *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 706, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995), that "an *Alford* plea . . . would have enabled [the defendant] to continue to maintain his innocence."

I conclude that the defendant's *Alford* plea may not be used at a subsequent probation revocation hearing as conclusive proof that he violated the conditions of his probation. The state may present evidence of his conviction at the hearing, but the *Alford* plea is not dispositive of his guilt of the alleged crime for which he previously entered the *Alford* plea. At any new probation revocation hearing, I believe that the defendant retains the right to contest his guilt, despite the fact that he had pleaded guilty under the *Alford* doctrine and was thereby convicted.

It is this court's responsibility to guide the parties and the trial courts. Literally thousands of *Alford* pleas have been made and may be made with the understanding that the defendant is not admitting guilt. If the effect

of such a plea will be to bar a later contest of guilt in another proceeding, I fail to see why any defendant would enter an *Alford* plea. As the highest court in this state, we should either give effect to the "protestation of innocence"; *North Carolina* v. *Alford,* supra, 400 U.S. 37; in an *Alford* plea or repudiate our past decisions approving its use.[2] A civilized criminal justice system demands nothing less.

I do agree that the trial court carefully and thoughtfully considered the ample evidence demonstrating that the defendant did violate the conditions of his probation. Accordingly, I concur in the result.

---

[2] See, e.g., *State* v. *Amarillo,* 198 Conn. 285, 314 n.17, 503 A.2d 146 (1986) ("[u]nder [*Alford*], a criminal defendant is not required expressly to admit his guilt, but effectively to consent to being punished as if he were guilty"); see also *State* v. *Coleman,* 242 Conn. 523, 527, 700 A.2d 14 (1997); *State* v. *Garvin,* 242 Conn. 296, 299, 699 A.2d 921 (1997); *State* v. *Domian,* 235 Conn. 679, 683, 668 A.2d 1333 (1996); *State* v. *Blue,* 230 Conn. 109, 110, 644 A.2d 859 (1994); *Commissioner of Correction* v. *Gordon,* 228 Conn. 384, 385, 636 A.2d 799 (1994); *State* v. *Campbell,* 224 Conn. 168, 171, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993); *State* v. *Esposito,* 223 Conn. 299, 302 n.2, 613 A.2d 242 (1992); *State* v. *Pinnock,* 220 Conn. 765, 777 n.4, 601 A.2d 521 (1992); *State* v. *Anderson,* 220 Conn. 400, 403, 599 A.2d 738 (1991); *State* v. *Niblack,* 220 Conn. 270, 275, 596 A.2d 407 (1991); *State* v. *Badgett,* 220 Conn. 6, 8, 595 A.2d 851 (1991); *Mainiero* v. *Liburdi,* 214 Conn. 717, 720, 573 A.2d 1207 (1990); *State* v. *Simms,* 211 Conn. 1, 3, 557 A.2d 914, cert. denied, 493 U.S. 843, 110 S. Ct. 133, 107 L. Ed. 2d 93 (1989); *State* v. *Crenshaw,* 210 Conn. 304, 306, 554 A.2d 1074 (1989); *State* v. *Wright,* 207 Conn. 276, 279, 542 A.2d 299 (1988); *Sutton* v. *Lopes,* 202 Conn. 343, 344, 521 A.2d 147 (1987); *Oppel* v. *Lopes,* 200 Conn. 553, 555, 512 A.2d 888 (1986); *State* v. *Watson,* 198 Conn. 598, 601, 504 A.2d 497 (1986); *State* v. *Sutton,* 197 Conn. 485, 487, 498 A.2d 65 (1985), cert. denied, 474 U.S. 1073, 106 S. Ct. 833, 88 L. Ed. 2d 804 (1986); *State* v. *James,* 197 Conn. 358, 359, 497 A.2d 402 (1985); *State* v. *Stanley,* 197 Conn. 309, 311, 497 A.2d 46 (1985); *State* v. *Palmer,* supra, 196 Conn. 169; *State* v. *Suggs,* 194 Conn. 223, 224–25, 478 A.2d 1008 (1984); *State* v. *Shockley,* 188 Conn. 697, 699, 453 A.2d 441 (1982); *Blue* v. *Robinson,* 173 Conn. 360, 378, 377 A.2d 1108 (1977).