******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## STATE OF CONNECTICUT *v.* JOSE RUIZ
## (AC 40668)

DiPentima, C. J., and Alvord and Beach, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court revoking his probation and sentencing him to a term of seven and one-half years incarceration, execution suspended after four years, and three years of probation, following his arrest for violating a condition of his probation. The defendant was on probation in connection with his conviction of assault in the first degree and carrying a pistol without a permit, and as a condition of his probation, he was required not to violate any criminal law of the United States, this state or any other state or territory. During his probation period, the defendant was arrested and charged with attempt to commit robbery in the first degree, threatening in the second degree and breach of peace in the second degree in connection with an incident in which the defendant allegedly accosted W at a store, threatened him with a weapon and chased him through the store's parking lot and nearby streets. When the police took a statement from W following that incident, he indicated that someone had tried to rob him with a gun at the store and that, if he saw the person again, he could identify him. Thereafter, a police officer returned to the store with W to conduct a one-on-one showup identification of the defendant, who was removed from the police cruiser and made to stand next to it with a spotlight shining directly on him. W immediately identified the defendant as the perpetrator. The identification occurred within approximately twenty minutes of the officer's initial arrival at the store and approximately forty-five minutes after W first had reported the incident to the police. The trial court denied the defendant's motion to suppress the identification, concluding that, although the identification procedure used by police was suggestive, it was not unnecessarily suggestive. Thereafter, the trial court held a hearing on the defendant's violation of probation charge, during which it heard testimony from three witnesses, including W, who recounted the events of the incident. Following the hearing, the court revoked the defendant's probation, concluding that although there was insufficient evidence to support a finding that the defendant had committed robbery or attempted robbery, the evidence was sufficient to support a finding that he had committed an act of threatening in the second degree in violation of a condition of his probation. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on his claim that the trial court improperly denied his motion to suppress the one-on-one showup identification, which was based on his claim that the identification procedure was unnecessarily suggestive and unreliable because the actions by the police served to convince W that the defendant was the individual who had accosted and chased him: W reported the incident within moments of when it occurred, the defendant was apprehended by police shortly thereafter, W had provided the police with an accurate description of the defendant prior to the identification, and once W viewed the defendant he immediately stated with certainty that the defendant was the individual who had tried to rob him at gunpoint; moreover, although the actions by the police were to some degree suggestive, this court in addressing similar facts has held that such actions do not constitute a due process violation, and given the small amount of time that elapsed between when the incident occurred and when the one-on-one showup identification was conducted, the identification procedure was not unnecessarily suggestive inasmuch as there was an exigency to provide W with an opportunity to identify the defendant while his memory of the incident was still fresh and to assist the police in determining whether they had apprehended the correct individual.

2. The defendant's claim that the trial court improperly found that he violated a condition of his probation because there was insufficient evidence to support its finding that he committed an act of threatening in the second degree in violation of statute (§ 53a-62 [a] [1]) was unavailing, as that

finding was not clearly erroneous; as a condition of his probation, the defendant was required not to violate any criminal law of the United States, this state or any other state or territory, and, on the basis of W's testimony, which the court found to be credible, there was sufficient evidence to find that the defendant had committed the crime of threatening in the second degree by threatening W with a weapon, or an item resembling a weapon, and chasing him a significant distance, causing him to experience what the court characterized as great and understandable fear, and irrespective of whether there were inconsistencies between W's testimony and other evidence in the record, determinations of credibility are solely within the purview of the trial court.

3. The trial court did not abuse its discretion in revoking the defendant's probation; although that court, in revoking the defendant's probation, did not find that the defendant committed robbery or attempted robbery, it did find that his actions in chasing W and threating W with a weapon, or what appeared to be a weapon, were nonetheless "quite scary," and despite concluding that there were sufficient grounds to incarcerate the defendant for the seven and one-half years remaining on his previous sentence, the court decided in its discretion to suspend the sentence after four years.

Argued January 2—officially released March 12, 2019

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of New Haven, where the court, *Blue, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the matter was tried to the court; judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Mary Boehlert*, assigned counsel, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Brian K. Sibley*, *Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Jose Ruiz, appeals from the judgment of the trial court revoking his probation and imposing a sentence of seven and one-half years incarceration, execution suspended after four years, and three years of probation. On appeal, the defendant claims that the trial court (1) improperly denied his motion to suppress the one-on-one showup identification on the ground that the identification procedure was not unnecessarily suggestive, (2) improperly found that he violated his probation, and (3) abused its discretion in revoking his probation. We are not persuaded and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of this appeal. On July 13, 2012, the defendant was convicted of three counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and was sentenced to twelve years incarceration, execution suspended after fifty-four months, and three years of probation. The defendant was released from incarceration on June 12, 2014, and placed on probation. As a condition of his probation, the defendant was not to violate the criminal laws of the United States, the state of Connecticut or any other state or territory.

On November 22, 2015, as a result of an incident at a Dunkin' Donuts in New Haven, the defendant was arrested and charged with attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134, threatening in the second degree in violation of General Statutes § 53a-62 and breach of peace in the second degree in violation of General Statutes § 53a-181. Following the defendant's arrest, his probation officer, Ada Casanova, on December 3, 2015, applied for an arrest warrant on the ground that the defendant had violated a condition of his probation. The next day, the application was granted and the arrest warrant was issued. The defendant denied the violation of probation charge and, on February 28, 2017, filed a motion to suppress the one-on-one showup identification that occurred shortly after the alleged incident on the ground that the identification procedure was unnecessarily suggestive.

On May 23, 2017, the court held a hearing on the defendant's motion to suppress. Following testimony from one witness, Police Officer Jason Santiago, and oral argument, the court concluded that although the identification procedure used by the police was suggestive, it was not "unnecessarily suggestive." After the court ruled on the defendant's motion, the hearing on the defendant's violation of probation charge commenced.

During the violation of probation hearing, the court heard testimony from three witnesses, Lawrence Welch, Casanova, and the first assistant clerk for the judicial district of New Haven, and also incorporated and considered Santiago's testimony from the earlier hearing on the motion to suppress. Following argument, the court found that the state had proven, by a preponderance of the evidence, that the defendant had violated his probation when "he accosted . . . Welch at the Dunkin' Donuts . . . and threatened him in various verbal ways and, at one point, displayed in a threatening manner a . . . weapon with a black handle . . . and chased . . . Welch a great distance . . . causing . . . Welch a great and very understandable fear." Although the court concluded that there was insufficient evidence to support a finding that the defendant had committed robbery or attempted robbery, it determined that the evidence was sufficient to support a finding that the defendant had committed an act of threatening in the second degree in violation § 53a-62 (a) (1). The court revoked the defendant's probation and sentenced him to seven and one-half years incarceration, execution suspended after four years, and three years of probation. This appeal followed. Additional facts will be set forth as needed.

I

The defendant claims that the trial court improperly denied his motion to suppress the one-on-one showup identification because the identification procedure was unnecessarily suggestive and unreliable. We conclude that the identification procedure was not unnecessarily suggestive.

We begin our analysis by setting forth our standard of review. "The test for determining whether the state's use of an unnecessarily suggestive identification procedure violates a defendant's federal due process rights derives from the decisions of the United States Supreme Court in *Neil* v. *Biggers*, 409 U.S. 188, 196–97, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), and *Manson* v. *Brathwaite*, 432 U.S. 98, 113–14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). As the court explained in *Brathwaite*, fundamental fairness is the standard underlying due process, and, consequently, reliability is the linchpin in determining the admissibility of identification testimony . . . . Thus, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the totality of the circumstances. . . . Furthermore, [b]ecause the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evi-

dence and whether the court's ultimate inference of reliability was reasonable. . . . Nevertheless, [w]e will reverse the trial court's ruling [on evidence] only [when] there is an abuse of discretion or [when] an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the inquiry into whether evidence of pretrial identification should be suppressed contemplates a series of [fact bound] determinations, which a trial court is far better equipped than this court to make, we will not disturb the findings of the trial court as to subordinate facts unless the record reveals clear and manifest error. . . . Finally, the burden rests with the defendant to establish both that the identification procedure was unnecessarily suggestive and that the resulting identification was unreliable." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 330 Conn. 91, 101–102, 191 A.3d 119 (2018).[1]

The following additional facts are relevant to this claim. During the hearing on the defendant's motion to suppress, Santiago stated that on November 22, 2015, he was an officer with the New Haven Police Department and that, at sometime between 6 a.m. and 6:30 a.m., he was dispatched to the area of 291 Ferry Street in New Haven, following a report that a patron at a Dunkin' Donuts had been robbed. Santiago was informed that the victim, Welch, had described the suspect as a Hispanic male, with a tattoo under his eye, wearing dark clothing. Upon his arrival at the Dunkin' Donuts, Santiago entered the store with another officer and saw the defendant "causing a disturbance." After the officers entered the store, the defendant went into the bathroom, and the store employees indicated that they wanted the individual removed from the premises. Santiago knocked on the bathroom door and ordered the defendant to come out, but he did not comply. Santiago opened the door and saw the defendant "just standing there." Immediately, Santiago noticed that the defendant was a Hispanic male, with a tattoo under his eye, dressed in dark clothing. The defendant was detained, handcuffed and placed in the back of one of the police cruisers in the parking lot.[2]

After he had detained the defendant, Santiago went to Welch's home and took his statement. Welch told the officer that "he was at Dunkin' Donuts and somebody attempted to rob him by indicating that [he] had a gun." Welch also indicated in his statement that if he saw the defendant again, he would be able to identify him. Accordingly, Santiago and Welch went back to the Dunkin' Donuts to conduct a one-on-one showup identification of the defendant. When they arrived in the parking lot, Santiago asked officers to remove the defendant from the police cruiser to have him stand next to the vehicle. Santiago then aimed the spotlight on his cruiser directly at the defendant. The moment that Welch saw the defendant, he stated "without a doubt . . . this is

the [individual] who tried to rob me at gunpoint." Santiago further testified that the identification of the defendant occurred within approximately twenty minutes of the officer's initial arrival at the Dunkin' Donuts and approximately forty-five minutes after Welch first had reported the incident to the police.

The defendant claims that the trial court improperly found that the one-on-one showup identification procedure was not unnecessarily suggestive because the actions by the police in this instance served to convince Welch that the defendant was the individual who had accosted and chased him. Specifically, the defendant contends that because he was detained in a police cruiser, in an area of the parking lot "away from any general population," Welch was presented with an initial impression of the defendant as a criminal. Furthermore, the defendant argues that because he was made to stand next to a police cruiser, in handcuffs, flanked by police officers, with a bright light shone on him, Welch was compelled to identify him as the culprit.

A review of existing precedent reveals that our courts have maintained, for some time, that an unnecessarily suggestive identification procedure is one that "gives rise to a very substantial likelihood of irreparable misidentification." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Marquez*, 291 Conn. 122, 139, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009). "[G]enerally a one-to-one confrontation between a [witness] and the suspect presented to him for identification is inherently and significantly suggestive because it conveys the message to the [witness] that the police believe the suspect is guilty. . . . We also have recognized, however, that the existence of exigencies may preclude such a procedure from being *unnecessarily* suggestive. . . .

"In the past, when we have been faced with the question of whether an exigency existed, we have considered such factors as whether the defendant was in custody, the availability of the victim, the practicality of alternate procedures and the need of police to determine quickly if they are on the wrong trail. . . . We have also considered whether the identification procedure provided the victim with an opportunity to identify his assailant while his memory of the incident was still fresh." (Emphasis in original; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 772–73, 99 A.3d 1130 (2014), cert. denied,      U.S.      , 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

Here, Welch reported the incident within moments of when it occurred, and the defendant was apprehended by the police shortly after they responded to the call. Moreover, prior to the showup identification, Welch had provided the police with an accurate description of the defendant, indicating that the suspect was a Hispanic male, with a tattoo under his eye, wearing

dark clothing. Upon communicating to Santiago that he could identify the individual responsible if given the opportunity, Welch was brought back to the Dunkin' Donuts within forty-five minutes to an hour of when he first reported the incident. Once Welch viewed the defendant, he immediately stated with certainty that this was the individual who had "tried to rob [him] at gunpoint." Although the actions by the police in this instance were to some degree suggestive, this court in addressing similar facts has held that such actions do not constitute a due process violation. See, e.g., *State* v. *Dakers*, 155 Conn. App. 107, 115, 112 A.3d 819 (2015) (presence of police, even with defendant in handcuffs, is not unnecessarily suggestive). Further, given the small amount of time that elapsed between when the incident occurred and when the one-on-one showup identification was conducted, we conclude that the identification procedure was not *unnecessarily* suggestive inasmuch as there was an exigency to provide Welch with an opportunity to identify the defendant while his memory of the incident was still fresh and to assist the police in determining whether they had apprehended the correct individual. See, e.g., *State* v. *Aviles*, 154 Conn. App. 470, 481, 106 A.3d 309 (2014) (showup identification procedure not unnecessarily suggestive when identification made shortly after robbery), cert. denied, 316 Conn. 903, 111 A.3d 471 (2015); *State* v. *Sparks*, 39 Conn. App. 502, 510, 664 A.2d 1185 (1995) (same); see also *State* v. *Smith*, 105 Conn. App. 278, 297 n.5, 937 A.2d 1194 (showup identification forty-five minutes to one hour after incident may not have been unnecessarily suggestive on basis of exigent circumstances), cert. denied, 286 Conn. 909, 944 A.2d 980 (2008). Thus, the court did not err in denying the defendant's motion to suppress the one-on-one showup identification on the ground that the identification procedure was not unnecessarily suggestive.[3]

II

The defendant next claims that the court improperly found that he violated a condition of his probation because there was insufficient evidence to support the finding that he committed an act of threatening in the second degree in violation of § 53a-62 (a) (1). Specifically, the defendant argues that this finding was predicated entirely on Welch's testimony, which the court erred in crediting because it was inconsistent with other evidence in the record. We are not convinced.

We first set forth our well settled standard of review. "This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Megos*, 176 Conn. App. 133, 140–41, 170 A.3d 120 (2017).

The following additional facts are relevant to this claim. During the violation of probation hearing, Welch testified that, on November 22, 2015, he was at a Dunkin' Donuts in New Haven, sitting at a table and drinking a coffee, when the defendant, who was sitting at a nearby table, made him "feel uncomfortable." Welch stood up and went to exit the store. The defendant followed him and cut him off at the door. The defendant then approached Welch, made him feel uneasy and threatened him. When asked to explain what happened next, Welch stated: "So, what happened next is he threatened me and I didn't take kindly to that. So I—he lunged at me and when I went to approach to defend myself, he jumped back and lifted up his shirt, and I saw a black handle in his waist, and he says we can do this right, let's not do it here, let's go over here." Welch backed his way out of the Dunkin' Donuts into the parking lot, and the defendant continued to follow him. At some point, two bystanders yelled at the defendant to stop. He turned around and told one of them to be quiet. While the defendant was turned around, Welch took off running. The defendant chased after him until Welch reached a police barracks substation and was able to hide behind a brick wall. When Welch no longer saw the defendant following him, he ran back to his residence and called the police. Welch testified that he told the police that an individual had confronted him at a Dunkin' Donuts and then chased after him through the parking lot and nearby streets. He could not remember whether he had told the police that the individual had attempted to rob him. After he called the police, an officer responded to his home within approximately one-half hour. Welch provided a statement to the officer, and together they went back to the Dunkin' Donuts to ascertain whether Welch could identify an apprehended individual as the same person who had threatened and chased him earlier that morning.[4]

In examining this evidence adduced during the violation of probation hearing, we cannot conclude that the trial court's finding that the defendant violated a condition of his probation was clearly erroneous. As stated previously in this opinion, a condition of the defendant's probation was that he not violate any of the criminal laws of the United States, this state, or any other state or territory. Pursuant to § 53a-62 (a) (1), "[a] person is guilty of threatening in the second degree when . . . [b]y physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ." On the basis of Welch's testimony, which the court found to be credible, there

was sufficient evidence to find that the defendant threatened Welch with a weapon, or an item resembling a weapon, and chased him a significant distance, causing Welch to experience "a great and understandable fear." Irrespective of whether there were inconsistencies between Welch's testimony and other evidence in the record,[5] determinations of credibility are solely within the purview of the trial court. See *State* v. *D'Haity*, 99 Conn. App. 375, 381–82, 914 A.2d 570 ("[w]e must defer to the trier of fact's assessment of the credibility of [a witness] that is made on the basis of its firsthand observation of [his] conduct, demeanor and attitude" [internal quotation marks omitted]), cert. denied, 282 Conn. 912, 924 A.2d 137 (2007). We conclude, therefore, that the court did not improperly find that the defendant violated his probation by committing an act of threatening in the second degree in violation of § 53a-62 (a) (1).

### III

Finally, the defendant claims that the trial court abused its discretion in revoking his probation because he was amenable to rehabilitation and did not pose a threat to public safety. We do not agree.

"If a violation [of a condition of probation] is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . As a general matter, a trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters in revocation of probation hearings. . . . On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused." (Citations omitted; internal quotation marks omitted.) *State* v. *Shakir*, 130 Conn. App. 458, 469–70, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).

In revoking the defendant's probation, the court noted that although it could not find that the defendant committed robbery or attempted robbery, his actions were nonetheless "quite scary." The court then repeated its finding that the defendant not only chased Welch, but threatened him with a weapon, or at the very least with an item that appeared to be a weapon. Additionally, despite concluding that there were sufficient grounds to incarcerate the defendant for the seven and one-half years remaining on his previous sentence, the court decided in its discretion to suspend the sentence after four years.[6] In light of the court's factual findings and its consideration of the entire record, we conclude that the court did not abuse its discretion in revoking the defendant's probation.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Furthermore, we note that it remains an unresolved question whether the due process protection against an unduly suggestive identification procedure applies in a violation of probation proceeding. See *State* v. *Daniels*, 248

Conn. 64, 80 n.16, 726 A.2d 520 (1999), overruled in part on other grounds by *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005). We need not, however, decide that issue in this case, as it was not a basis for the court's denial of the motion to suppress and neither party has addressed it on appeal. See *State* v. *Bouteiller*, 112 Conn. App. 40, 45 n.4, 961 A.2d 995 (2009).

[2] The defendant was patted down for weapons, given that the initial complaint indicated that a robbery had occurred. No weapons, however, were located on the defendant's person or in the vicinity of the Dunkin' Donuts.

[3] Because we conclude that the identification procedure was not unnecessarily suggestive, we do not reach the issue of reliability. See *State* v. *Outing*, 298 Conn. 34, 55, 3 A.3d 1 (2010), cert. denied, 562 U.S. 1225, 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011).

[4] Welch identified the officer that responded to his home as the same officer, Santiago, who had testified during the motion to suppress hearing. He also identified, in court, the defendant as the individual that he identified to officers on November 22, 2015.

[5] The defendant argues that Welch's testimony conflicted with his initial statement to the police insofar as he told officers that he had been robbed but later testified that he was not robbed and, instead, only felt threatened. Moreover, the defendant contends that Welch's description of him to the police was inaccurate because he stated that the defendant had a tattoo of a "tear drop" under his eye, when, in fact, the defendant's tattoo is of a "musical note."

[6] In deciding to afford the defendant a future opportunity of probation, the court stated that it agreed with Casanova's opinion that, although the defendant should be required to serve a period of incarceration given the seriousness of the offenses at issue, he should also be given a chance to resume probation with certain additional conditions.