******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# STATE OF CONNECTICUT *v.* JOSE RUIZ
## (SC 20275)

Robinson, C. J., and Palmer, McDonald, D'Auria, Mullins and Ecker, Js.*

*Syllabus*

The defendant appealed to the Appellate Court from the trial court's judgment revoking his probation following an incident in which he allegedly robbed and threatened W, a customer at a donut shop. A police officer had been dispatched to the donut shop after a report that a customer had been robbed there. The officer was informed that the customer, W, had described the suspect as a Hispanic male with a tattoo under his eye and had indicated that the suspect was wearing dark clothing. Upon the officer's arrival at the donut shop, he saw someone causing a disturbance. That person retreated to the bathroom, where the officer found him. The officer immediately noticed that that person, the defendant, was a Hispanic male, had a tattoo under his eye, and was dressed in dark clothing. The defendant was then detained in a police cruiser in the donut shop's parking lot. The officer then went to W's house and took his statement. W told the officer that someone attempted to rob him at the donut shop by indicating that he had a gun. W also stated that he would be able to identify his assailant if he saw him again. The officer and W then went back to the donut shop. When they arrived, the officer asked another officer to remove the defendant from the cruiser and have him stand next to it. The officer aimed a spotlight on the cruiser and the defendant, and W stated, "without a doubt," that was the person who robbed him. That identification occurred within twenty minutes of the officer's initial arrival at the donut shop and within forty-five minutes after W first reported the incident. After the defendant was charged with violating his probation, he filed a motion to suppress W's identification of him, claiming that the one-on-one show up procedure the police used in connection with the identification violated his due process rights. The trial court denied the motion, concluding that the procedure was not unnecessarily suggestive. On appeal, the Appellate Court concluded, inter alia, that the procedure the police had used, although suggestive, was not unnecessarily suggestive due to the exigencies of the ongoing investigation and affirmed the trial court's judgment. On the granting of certification, the defendant appealed to this court, claiming that the identification procedure the police used was unnecessarily suggestive and rendered the identification unreliable. *Held* that the defendant could not prevail on his claim that the trial court had improperly declined to suppress the identification because, even if the identification procedure the police used was unnecessarily suggestive, W's identification of the defendant, in light of the totality of the circumstances, was reliable; W had a good opportunity to view the defendant at close range while they were in the donut shop before the defendant threated him and again when the defendant confronted him face-to-face, W was attentive because of the defendant's strange and disturbing focus on him, W gave an accurate description of the defendant within moments of the incident, W had a high level of certainty with respect to his identification, and the identification was made less than one hour after W's initial encounter with the defendant.

Argued May 8—officially released December 11, 2020**

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of New Haven, where the court, *Blue, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the case was tried to the court, *Blue, J.*; judgment revoking the defendant's probation, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Alvord* and *Beach, Js.*, which

affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Mary Boehlert*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Brian K. Sibley, Sr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Jose Ruiz, appeals, upon our granting of certification, from the judgment of the Appellate Court, which affirmed the judgment of the trial court revoking the defendant's probation following an incident in which he allegedly robbed and threatened a customer, Lawrence Welch, at a Dunkin' Donuts store in the city of New Haven. See *State* v. *Ruiz*, 188 Conn. App. 413, 416–17, 204 A.3d 798 (2019). After he was charged with violating a condition of his probation on the basis of that incident, the defendant filed a motion to suppress Welch's identification of him, claiming that the one-on-one showup procedure that the police used in connection with that identification violated his rights under the due process clause of the fourteenth amendment to the United States constitution.[1] The trial court denied the motion, concluding that the procedure was not unnecessarily suggestive and, following a hearing, found that the defendant had violated his probation. Thereafter, the court rendered judgment revoking the defendant's probation and imposing a sentence of seven and one-half years of incarceration, execution suspended after four years, and three years of probation. On appeal to the Appellate Court, the defendant claimed, inter alia, that, contrary to the determination of the trial court, the showup identification procedure was unnecessarily suggestive and, further, that the flawed procedure had rendered the identification unreliable. See id., 417. The Appellate Court concluded that the procedure that the police used, although suggestive, was not unnecessarily suggestive due to the exigencies of the ongoing investigation; id., 421–22; and, in light of this determination, the court did not reach the issue of reliability. Id., 422 n.3. The Appellate Court also rejected the defendant's other claims[2] and, accordingly, affirmed the trial court's judgment. In this certified appeal, the defendant contends that the identification procedure used by the police violated the federal constitution because it was unnecessarily suggestive and rendered the identification unreliable. We affirm the judgment of the Appellate Court, albeit for a reason different from that relied on by the Appellate Court, namely, because Welch's identification of the defendant was reliable notwithstanding the inherent suggestiveness of the showup procedure.

The following facts, as set forth in the opinion of the Appellate Court, and procedural history are relevant to our resolution of this appeal. "On July 13, 2012, the defendant was convicted of three counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and was sentenced to twelve years [of] incarceration, execution suspended after fifty-four months, and three years of probation. The defendant was released from incar-

ceration on June 12, 2014, and placed on probation. As a condition of his probation, the defendant was not to violate the criminal laws of the United States, the state of Connecticut or any other state or territory.

"On November 22, 2015, as a result of an incident at a Dunkin' Donuts in New Haven, the defendant was arrested and charged with attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134, threatening in the second degree in violation of General Statutes [Rev. to 2015] § 53a-62 and breach of the peace in the second degree in violation of General Statutes § 53a-181. Following the defendant's arrest, his probation officer, Ada Casanova, on December 3, 2015, applied for an arrest warrant on the ground that the defendant had violated a condition of his probation. The next day, the application was granted and the arrest warrant was issued. The defendant denied the violation of probation charge and, on February 28, 2017, filed a motion to suppress the one-on-one showup identification that occurred shortly after the alleged incident on the ground that the identification procedure was unnecessarily suggestive." Id., 415–16.

"On May 23, 2017, the [trial] court held a hearing on the defendant's motion to suppress." Id., 416. "During the hearing . . . [Jason] Santiago [testified] that, on November 22, 2015, he was an officer with the New Haven Police Department and that, at sometime between 6 and 6:30 a.m., he was dispatched to the area of 291 Ferry Street in New Haven, following a report that a patron at a Dunkin' Donuts had been robbed. Santiago was informed that the victim, Welch, had described the suspect as a Hispanic male, with a tattoo under his eye, wearing dark clothing. Upon his arrival at the Dunkin' Donuts, Santiago entered the store with another officer and saw the defendant 'causing a disturbance.' After the officers entered the store, the defendant went into the bathroom, and the store employees indicated that they wanted the individual removed from the premises. Santiago knocked on the bathroom door and ordered the defendant to come out, but he did not comply. Santiago opened the door and saw the defendant 'just standing there.' Immediately, Santiago noticed that the defendant was a Hispanic male, with a tattoo under his eye, dressed in dark clothing. The defendant was detained, handcuffed and placed in the back of one of the police cruisers in the parking lot."[3] Id., 419.

"After he had detained the defendant, Santiago went to Welch's home and took his statement. Welch told the officer that 'he was at Dunkin' Donuts and somebody attempted to rob him by indicating that [he] had a gun.' Welch also indicated in his statement that, if he saw the defendant again, he would be able to identify him. Accordingly, Santiago and Welch went back to the Dunkin' Donuts to conduct a one-on-one showup identifica-

tion of the defendant. When they arrived in the parking lot, Santiago asked officers to remove the defendant from the police cruiser to have him stand next to the vehicle. Santiago then aimed the spotlight on his cruiser directly at the defendant. The moment that Welch saw the defendant, he stated 'without a doubt . . . this is the [individual] who tried to rob me at gunpoint.' Santiago further testified that the identification of the defendant occurred within approximately twenty minutes of the officer's initial arrival at the Dunkin' Donuts and approximately forty-five minutes after Welch first had reported the incident to the police." Id., 419–20.

The trial court concluded that, although the identification procedure that the police used was suggestive, it was not unnecessarily suggestive. The court reasoned that "confrontations like this are not unnecessary because it's prudent for the police to provide the victim with an opportunity to identify the assailant while the memory of the incident is still fresh and because it's necessary to allow the police to eliminate quickly any innocent parties [and] to continue the investigation with . . . minimum delay if the victim excludes the defendant as a suspect or is unable to identify him. . . . [T]hat is the case here." (Citation omitted.) After the court ruled on the defendant's motion to suppress, the hearing on the defendant's violation of probation charge commenced.

"During the violation of probation hearing, the court heard testimony from three witnesses . . . Welch, Casanova, and the first assistant clerk for the judicial district of New Haven, and also incorporated and considered Santiago's testimony from the earlier hearing on the motion to suppress. Following argument, the court found that the state had proven, by a preponderance of the evidence, that the defendant . . . violated his probation when 'he accosted . . . Welch at the Dunkin' Donuts . . . and threatened him in various verbal ways and, at one point, displayed in a threatening manner a . . . weapon with a black handle . . . and chased . . . Welch a great distance . . . causing . . . Welch a great and very understandable fear.' Although the court concluded that there was insufficient evidence to support a finding that the defendant had committed robbery or attempted robbery, it determined that the evidence was sufficient to support a finding that the defendant had committed an act of threatening in the second degree in violation of § 53a-62 (a) (1). The court revoked the defendant's probation and sentenced him [as previously indicated] . . . ." *State* v. *Ruiz*, supra, 188 Conn. App. 416–17.

The defendant appealed to the Appellate Court from the judgment of the trial court, claiming, inter alia, that the trial court should have granted his motion to suppress Welch's identification because the showup procedure employed by the police was unnecessarily sugges-

tive, and, as a result, the identification was unreliable. See id., 417. The Appellate Court concluded that, although the procedure was "to some degree suggestive"; id., 421; it was not unduly so "inasmuch as there was an exigency to provide Welch with an opportunity to identify the defendant while his memory of the incident was still fresh and to assist the police in determining whether they had apprehended the correct individual." Id., 422. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 426.

On appeal to this court, the defendant maintains that the Appellate Court incorrectly concluded that the challenged identification was not unnecessarily suggestive. In support of this contention, the defendant notes that the police transported Welch back to the Dunkin' Donuts, the scene of the crime, where the defendant, the sole subject of the identification procedure, was seated in a police cruiser located in the rear of the parking lot. Welch watched as the defendant, in handcuffs and flanked by police officers, was removed from the cruiser and directed to stand next to it while one of the officers shone a bright spotlight directly on him. The record, moreover, contains no indication that the police ever cautioned Welch that the person he had been asked to view may or may not have been the perpetrator. The defendant also asserts that any legitimate interest the police may have had in promptly ascertaining whether Welch could identify the defendant as his assailant was outweighed by the highly prejudicial nature of the showup identification procedure, a procedure that clearly reflected the belief of the investigating officers that the suspect in their custody was the person who had accosted and threatened Welch. Finally, the defendant asserts that Welch's identification of him was unreliable. His primary argument in support of this claim is that, because Santiago, rather than Welch, testified at the hearing on the defendant's motion to suppress Welch's identification, there is an insufficient credible basis in fact to conclude that, under all of the circumstances, that identification was reliable.[4]

The state contends that the Appellate Court properly determined that the trial court was correct in concluding that the identification procedure at issue was not unnecessarily suggestive and, therefore, passes muster under the due process clause of the fourteenth amendment. Although urging us to affirm the judgment of the Appellate Court on that ground, the state also maintains that, even if we were to conclude that the identification procedure was unnecessarily suggestive, it nevertheless was reliable.[5] We need not decide whether that procedure, although obviously suggestive, was unnecessarily suggestive, because, for the reasons set forth in this opinion, we conclude that Welch's identification of the defendant was reliable.[6] Accordingly, the defendant cannot prevail on his claim that the trial court improperly declined to suppress the identification.[7]

"The test for determining whether the state's use of an [allegedly] unnecessarily suggestive identification procedure violates a defendant's federal due process rights derives from the decisions of the United States Supreme Court in *Neil* v. *Biggers*, 409 U.S. 188, 196–97, 93 S Ct. 375, 34 L. Ed. 2d 401 (1972), and *Manson* v. *Brathwaite*, 432 U.S. 98, 113–14, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). As the court explained in *Brathwaite*, fundamental fairness is the standard underlying due process, and consequently, 'reliability is the linchpin in determining the admissibility of identification testimony . . . .' Id., 114. Thus, 'the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the totality of the circumstances.' *State* v. *Marquez*, 291 Conn. 122, 141, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009)." *State* v. *Harris*, 330 Conn. 91, 101, 191 A.3d 119 (2018).

With respect to the first prong of this analysis, "[b]ecause, [g]enerally, [t]he exclusion of evidence from the jury is . . . a drastic sanction, [it] . . . is limited to identification testimony [that] is manifestly suspect . . . . [Consequently] [a]n identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification. . . . We have recognized that [ordinarily] a one-to-one confrontation between a [witness] and the suspect presented . . . for identification is inherently and significantly suggestive because it conveys the message to the [witness] that the police believe the suspect is guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 772–73, 99 A.3d 1130 (2014), cert. denied, 574 U.S. 1177, 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015); see also *Neil* v. *Biggers*, supra, 409 U.S. 198 ("[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous"). For this reason, when not necessary, "the presentation of a single suspect to a witness by the police (as opposed to a lineup, in which several individuals are presented to the police, only one of whom is the suspect) . . . has . . . been widely condemned . . . ." (Citations omitted; internal quotation marks omitted.) *Brisco* v. *Ercole*, 565 F.3d 80, 88 (2d Cir.), cert. denied, 558 U.S. 1063, 130 S. Ct. 739, 175 L. Ed. 2d 542 (2009).

It is well established, however, that the use of a one-on-one showup identification procedure does not invariably constitute a denial of due process, as it may be justified by exigent circumstances. See, e.g., *State* v. *Revels*, supra, 313 Conn. 773; *State* v. *Wooten*, 227

Conn. 677, 686, 631 A.2d 271 (1993). Thus, a showup identification procedure conducted in close temporal and geographic proximity to the offense may be deemed reasonable, and, therefore, permissible for federal due process purposes, when "it was prudent for the police to provide the victim with the opportunity to identify [his] assailant while [his] memory of the incident was still fresh . . . and . . . [the procedure] was necessary to allow the police to eliminate quickly any innocent parties so as to continue the investigation with a minimum of delay, if the victim excluded the defendant as a suspect or was unable to identify him."[8] (Citation omitted; internal quotation marks omitted.) *State* v. *Wooten*, supra, 227 Conn. 686; accord *State* v. *Ledbetter*, 275 Conn. 534, 551, 881 A.2d 290 (2005) (overruled on other grounds by *State* v. *Harris*, 330 Conn. 91, 191 A.3d 119 (2018)), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006). Moreover, when the police take prompt steps to identify a detained suspect in order to achieve these objectives, the use of handcuffs and illumination does not necessarily render the identification unduly suggestive.[9] E.g., *United States* v. *Bautista*, 23 F.3d 726, 730 (2d Cir.) ("The fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights . . . did not render the [pretrial] identification procedure unnecessarily suggestive. . . . Because the on-the-scene identification was necessary to allow the officers to release the innocent, the incidents of that identification were also necessary."), cert. denied sub nom. *Minier-Contreras* v. *United States*, 513 U.S. 862, 115 S. Ct. 174, 130 L. Ed. 2d 110 (1994); see also *State* v. *Revels*, supra, 767, 774 (showup identification procedure was not unnecessarily suggestive even though identification took place while "the defendant was standing in the middle of the road, handcuffed and surrounded by uniformed police officers . . . [one of whom] directed [a] spotlight on his cruiser toward the [defendant]").

We need not opine on the propriety of the procedure used by the police in the present case, however, because, even if we were to assume, contrary to the conclusion of the Appellate Court, that it was unnecessarily suggestive, Welch's identification of the defendant was reliable under all of the relevant circumstances.[10] "As mandated in *Neil* v. *Biggers*, supra, 409 U.S. 188, and reiterated by the court in *Manson* v. *Brathwaite*, supra, 432 U.S. 98, for federal constitutional purposes, we determine whether an identification resulting from an unnecessarily suggestive procedure is reliable under the totality of the circumstances by comparing the corrupting effect of the suggestive identification against factors including the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at

the [identification], and the time between the crime and the [identification]. *Manson* v. *Brathwaite*, supra, 114, citing *Neil* v. *Biggers*, supra, 199–200." (Internal quotation marks omitted.) *State* v. *Harris*, supra, 330 Conn. 108. The relevant factors in the present case support the conclusion that Welch's identification was reliable.

Before reviewing those factors, however, we recite Welch's testimony at the violation of probation hearing, as summarized in the opinion of the Appellate Court, because it bears on the issue of reliability.[11] "[At that] hearing, Welch testified that, on [the day in question], he was at a Dunkin' Donuts in New Haven, sitting at a table and drinking a coffee, when the defendant, who was sitting at a nearby table, made him 'feel uncomfortable.' Welch stood up and went to exit the store. The defendant followed him and cut him off at the door. The defendant then approached Welch, made him feel uneasy and threatened him. When asked to explain what happened next, Welch stated: 'So, what happened next is he threatened me, and I didn't take kindly to that. So I—he lunged at me, and when I went to approach to defend myself, he jumped back and lifted up his shirt, and I saw a black handle in his waist, and he [said] we can do this right, let's not do it here, let's go over here.' Welch backed his way out of the Dunkin' Donuts into the parking lot, and the defendant continued to follow him. At some point, two bystanders yelled at the defendant to stop. He turned around and told one of them to be quiet. While the defendant was turned around, Welch took off running. The defendant chased after [Welch] until [he] reached a police barracks substation and was able to hide behind a brick wall. When Welch no longer saw the defendant following him, he ran back to his residence and called the police. Welch testified that he told the police that an individual had confronted him at a Dunkin' Donuts and then chased after him through the parking lot and nearby streets. He could not remember whether he had told the police that the individual had attempted to rob him. After he called the police, an officer responded to his home within approximately one-half hour. Welch provided a statement to the officer, and, together, they went back to the Dunkin' Donuts to ascertain whether Welch could identify an apprehended individual as the same person who had threatened and chased him earlier that morning." *State* v. *Ruiz*, supra, 188 Conn. App. 423–24.

Turning to the considerations pertinent to the issue of the reliability of Welch's identification, we agree with the state that each of them militates in favor of a determination of admissibility. With respect to the first two factors, namely, Welch's opportunity to observe the suspect and his degree of attentiveness, it is apparent that Welch had a good opportunity to view the defendant at close range while in Dunkin' Donuts, both when they were seated at nearby tables—before the defendant engaged in any physically assaultive behavior

toward Welch—and, again, when the defendant confronted the defendant, face-to-face, at the door. Welch also was able to observe the defendant outside the store, albeit at a somewhat greater distance, when the defendant pursued Welch as he attempted to flee. Welch's testimony further indicates that he was attentive to the defendant because of the defendant's strange and disturbing focus on him; in fact, Welch was so keenly aware of the defendant's unusual reaction to him that he decided to leave Dunkin' Donuts.[12] With respect to the third relevant factor, the accuracy of Welch's original description of the defendant, Welch gave the police an accurate description of the defendant within moments of the incident, reporting that the suspect was a Hispanic male in dark clothing with a highly distinctive facial tattoo under his eye. As for Welch's level of certainty with respect to his identification, he told the police that he could identify the suspect, and, when given the opportunity, he did so immediately and with certainty. Finally, the identification was conducted promptly, less than one hour after Welch's initial encounter with the defendant.

We are fully satisfied that, considering the totality of the circumstances, Welch's identification of the defendant was reliable. Indeed, the defendant has identified no facts or circumstances to support a different conclusion. Consequently, we agree with the Appellate Court that the trial court properly denied the defendant's motion to suppress Welch's identification because its use by the state in connection with the defendant's violation of probation hearing did not violate the defendant's rights under the due process clause of the fourteenth amendment to the United States constitution.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

\*\* December 11, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

As we discuss more fully hereinafter, a police identification procedure will be deemed to violate principles of federal due process only if the procedure was *both* unnecessarily suggestive *and* the resulting identification was unreliable. See, e.g., *State* v. *Harris*, 330 Conn. 91, 101, 191 A.3d 119 (2018).

[2] On appeal to the Appellate Court, the defendant also maintained that the trial court incorrectly found that he had violated his probation and abused its discretion in revoking his probation. *State* v. *Ruiz*, supra, 188 Conn. App. 422, 425. Those claims are not the subject of this appeal.

[3] "The defendant was patted down for weapons, given that the initial complaint indicated that a robbery had occurred. No weapons, however, were located on the defendant's person or in the vicinity of the Dunkin' Donuts." *State* v. *Ruiz*, supra, 188 Conn. App. 419 n.2.

[4] As we noted previously and discuss more fully hereinafter, Welch did testify at the violation of probation hearing.

[5] After the defendant filed his appeal, we granted the state's motion for permission to raise an alternative ground of affirmance, namely, that the due process standards for the admission of identification evidence at a

criminal trial do not apply in the context of a probation revocation proceeding, an issue that this court has not yet resolved. See *State* v. *Daniels*, 248 Conn. 64, 80 n.16, 726 A.2d 520 (1999), overruled in part on other grounds by *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005). In light of our conclusion that the defendant is not entitled to the relief he seeks because Welch's identification was reliable, we need not address the state's alternative ground for affirmance.

[6] We note that we certified the following issue: "Did the Appellate Court correctly conclude that the one-on-one showup identification was not unnecessarily suggestive?" *State* v. *Ruiz*, 331 Conn. 915, 204 A.3d 703 (2019). As we have explained, however, both parties have briefed the issue of whether Welch's identification was reliable. Moreover, the defendant asserts that the record is adequate for our resolution of the reliability issue, even though the issue was not pursued in the trial court, and we agree. Although the state questions the adequacy of the record, it has identified no additional evidence that it would have adduced if the reliability of the identification had been fully litigated in the trial court. Our consideration of the issue will in no way prejudice the state because we agree with the state that the identification was reliable. We are therefore free to resolve the appeal on that basis.

[7] Before addressing the reliability issue, we first consider the state's contention that this appeal must be dismissed as moot. The state claims that, because the defendant did not litigate the issue of reliability in the trial court and, consequently, never received a ruling by the trial court on that issue, he cannot prevail on appeal, even if we were to conclude that the Welch's identification was unnecessarily suggestive. In other words, in the state's view, because the defendant is required to prove both that the identification procedure was unnecessarily suggestive and that the identification was unreliable; see footnote 1 of this opinion; he would not be entitled to any relief from this court in view of the fact that he has not pursued a claim of unreliability, thereby rendering the appeal moot. See, e.g., *State* v. *Jevarjian*, 307 Conn. 559, 563–67, 58 A.3d 243 (2012) (because resolution of certified issue would not affect underlying judgment against defendant, appeal was moot, and court would not reach certified issue). The state's claim of mootness fails because it does not account for the fact that, even though the defendant apparently did not raise a claim of unreliability in the trial court, he did so in the Appellate Court, as permitted under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)—which set forth the requirements for claims of unpreserved constitutional error—and, despite the fact that our grant of certification was limited to the issue decided by the Appellate Court, that is, whether the identification was unnecessarily suggestive, the defendant has also raised the issue of reliability in this court. Indeed, even if he had not raised the issue of reliability in this court, the fact that he did so in the Appellate Court would require us to remand the case to that court for resolution of that issue in the event we decided the certified question in his favor. Thus, although we ultimately agree with the state that the defendant cannot prevail on the merits of his unreliability claim, this appeal is not moot.

[8] Consistent with these considerations regarding the necessity of a one-on-one showup identification procedure, we have stated that, "when . . . faced with the question of whether an exigency [sufficient to justify the procedure] existed, we have considered such factors as whether the defendant was in custody, the availability of the victim, the practicality of alternate procedures and the need of police to determine quickly if they are on the wrong trail. . . . We have also considered whether the identification procedure provided the victim with an opportunity to identify his assailant while his memory of the incident was still fresh." (Internal quotation marks omitted.) *State* v. *Revels*, supra, 313 Conn. 773.

[9] Such a procedure likely will be considered unnecessarily suggestive, however, if the police engage in conduct that is needlessly or gratuitously prejudicial. See, e.g., *Velez* v. *Schmer*, 724 F.2d 249, 250 (1st Cir. 1984) (during one-on-one showup identification procedure, police said to witnesses, " '[t]his is him, isn't it?' ").

[10] We decide the case on this alternative basis because, in our view, Welch's identification of the defendant was quite clearly reliable and, therefore, provides a firm basis on which to reject the defendant's claim without the need to address whether the identification procedure that the police used, although suggestive, was not unnecessarily so. We do not address the issue of whether the identification procedure was unnecessarily suggestive in

light of our resolution of the appeal under the reliability prong of the due process test.

[11] Although this testimony occurred during the portion of the hearing concerning the violation of probation rather than the motion to suppress, we may consider it in determining the propriety of the trial court's denial of the defendant's motion to suppress Welch's identification. See, e.g., *State v. Reynolds*, 264 Conn. 1, 42 n.30, 836 A.2d 224 (2003) (reviewing court may consider testimony adduced both at trial and at suppression hearing when determining propriety of trial court's ruling on motion to suppress), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

[12] It also bears noting that the defendant himself believed that Welch was staring at him.